Roy E. BOWDEN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 95–5166.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 18, 1996.

Decided Feb. 18, 1997.

Lawrence E. Williams, Jr., Washington, DC, argued the cause and filed the briefs, for appellant.

Claire M. Whitaker, Assistant U.S. Attorney, argued the cause, for appellee. With her on the brief were Eric H. Holder, Jr., U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney, Washington, DC.

Before WALD, GINSBURG and TATEL, Circuit Judges.

Opinion for the court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

This case involves a dispute between appellant and his former employer, the Immigration and Naturalization Service, over a Title VII settlement agreement. In a three-count complaint, appellant alleged that the INS breached the agreement by failing to

bear appellant's entire tax liability on the settlement payment, that the agency violated the Back Pay Act by failing to pay interest on the award, and that it injured him by negligently failing to fulfill the legal duties alleged in the first two counts. The district court dismissed the complaint, finding that appellant had failed properly to exhaust administrative remedies required to bring the first and third counts and that the second count failed to state a claim under the Back Pay Act. Concluding that the government waived its exhaustion defense concerning appellant's first claim, we reverse the district court's dismissal of that count and remand for further proceedings. We affirm the dismissal of appellant's Back Pay Act and tort claims.

## I

Appellant, Roy Bowden, worked for the INS from 1975 to 1982 as a detention enforcement officer. In 1978, after the INS declined to select him for several vacancies as a criminal investigator, Bowden filed a race discrimination complaint with the agency. The complaint moved slowly through the administrative process. On January 10, 1990, over a decade after filing his complaint, Bowden settled his claim in exchange for a lump-sum back-pay award. Under the settlement agreement, the INS paid Bowden $190,000 on January 31, 1990. That figure represented approximately $242,000 in back pay for the period from April 1978, the date on which Bowden had been passed over for the criminal investigator positions, to the date of the agreement, minus deductions for payroll taxes.

In April 1991, Bowden learned from the Internal Revenue Service and the Maryland Tax Department that he owed additional tax on the settlement payment. Eight months later, in December 1991, Bowden wrote to the INS, claiming that the agency had agreed to pay all taxes on the settlement payment. The INS did not respond. Bowden wrote again in May 1992, reiterating his claim and explaining that the INS staff person with whom he had negotiated the settlement agreement had assured him that the agency would pay all taxes due on the settle-

ment amount, but that this oral agreement had inadvertently been left out of the written agreement. This time the INS responded, claiming in a July 24 letter that it had already paid the appropriate payroll taxes in accord with federal regulations and that the settlement agreement made clear that it bore no additional tax liability. One month later, on August 24, Bowden again wrote to the INS, repeating his allegations and stating that his letter should serve as the thirty-day notification required by 29 C.F.R. § 1613.217(b) (1991). In relevant part, that regulation provides: "If the complainant believes that the agency has failed to comply with the terms of the settlement agreement, the complainant shall notify the [agency's] Director of Equal Employment Opportunity, in writing, of the alleged noncompliance with the settlement agreement, within 30 days of when the complainant knew or should have known of the alleged noncompliance." 29 C.F.R. § 1613.217(b) (1991) (recodified at 29 C.F.R. § 1614.504(a) (1996)).

In October 1992, Bowden filed suit in the U.S. District Court for the District of Columbia. Agreeing with the Government that the first two counts of Bowden's complaint—those for breach of the settlement agreement and for violation of the Back Pay Act—were within the exclusive jurisdiction of the Court of Federal Claims and that Bowden had failed to exhaust his administrative remedies regarding the tort claims alleged in the third count, the district court dismissed the complaint without prejudice. Bowden then filed a new, identical complaint before the Court of Claims. There, the Government argued, directly contrary to its position in the district court, that the first two counts were not within the Court of Claims's jurisdiction. Agreeing, the Court of Claims transferred the entire matter back to the district court.

In February 1995, the district court dismissed the complaint, this time with prejudice. Again agreeing with the Government, the district court found that Bowden's attempts to exhaust his administrative remedies relating to Count One had been untimely; that Bowden had failed, as a matter of law, to establish his entitlement to interest under the Back Pay Act, as alleged in Count

Two; and that Count Three was barred by the district court's earlier dismissal order finding that Bowden had failed to exhaust the administrative remedies necessary to bring a case under the Federal Tort Claims Act. Our review is *de novo. See, e.g., Wilson v. Pena,* 79 F.3d 154, 160 n. 1 (D.C.Cir. 1996).

## II

■ Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 (1994), gives the Equal Employment Opportunity Commission broad authority to enforce the Act's antidiscrimination mandate within the federal government, including responsibility for issuing regulations to control federal agencies' processing of discrimination complaints. *Id.* § 2000e–16(b). Pursuant to that authority, the EEOC has established detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the Commission. 29 C.F.R. §§ 1613.201–283 (1991) (recodified at 29 C.F.R. part 1614 (1996)). Complainants must timely exhaust these administrative remedies before bringing their claims to court. *Brown v. GSA,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402 (1976); *Bayer v. United States Dept. of the Treasury,* 956 F.2d 330, 332 (D.C.Cir.1992). Like the suit-filing time limits contained in the Act, *see* 42 U.S.C. § 2000e–16(c) (1994), the administrative time limits created by the EEOC erect no jurisdictional bars to bringing suit. Rather, functioning like statutes of limitations, these time limits are subject to equitable tolling, estoppel, and waiver. *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990) (statutory time limit); *Jarrell v. United States Postal Serv.,* 753 F.2d 1088, 1091 (D.C.Cir.1985) (administrative time limit); *see also Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (establishing same equitable principles apply to Title VII complaints against employers other than federal government).

■ The district court dismissed Count One because Bowden, by failing to comply with the thirty-day complaint-filing requirement contained in 29 C.F.R. § 1613.217(b) (1991), had not timely exhausted his administrative remedies. Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it. *Brown v. Marsh,* 777 F.2d 8, 13 (D.C.Cir.1985). If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense. *Bayer,* 956 F.2d at 333; *Jarrell,* 753 F.2d at 1091–92; *cf.* 29 C.F.R. § 1613.214(a)(4) (1991) (recodified as amended at 29 C.F.R. § 1614.204(c)).

In this case, the pleadings and undisputed documents in the record establish that Bowden failed to meet the thirty-day notification requirement. As his brief concedes, Bowden did not write to the INS about its alleged failure to pay all the required taxes on the settlement award until December 1991, nearly a year after Bowden received payment from the Government and, as his complaint acknowledges, eight months after notices from the IRS and the Maryland Tax Department alerted him that he owed tax on the settlement award.

■ Bowden argues, as he did in his August 24, 1992, letter, that because he could not know that the INS had failed to comply with the settlement agreement until the agency clearly denied his allegations, the thirty-day clock did not begin to run until the INS first responded to his allegations of noncompliance on July 24, 1992. In some cases, notably where a complainant's knowledge of agency noncompliance depends on information in the government's possession, action by the agency may indeed be the appropriate trigger for the running of the thirty-day clock. *See, e.g., Aiken v. Reilly,* No.90–0987–LFO, 1991 WL 126000, at *3 (D.D.C. June 26, 1991), *aff'd sub nom. Aiken v. Browner,* No. 92–5151, 1993 WL 267511 (D.C.Cir. July 7, 1993); *cf. Loe v. Heckler,* 768 F.2d 409, 418–19 (D.C.Cir.1985) (holding that when, because of information withheld by the government, a complainant neither knew nor reasonably could have known that

the government had made a discriminatory employment decision, the limitations period for filing a discrimination complaint is tolled); *Stoller v. Marsh,* 682 F.2d 971, 974 (D.C.Cir. 1982) (same). But this is not such a case. As both Bowden's pleading in the district court and brief on appeal admit, the documents that clearly notified him that the agency had failed to pay taxes he believed it had agreed to pay—tax bills from the IRS and the Maryland Tax Department—were in his possession, not the INS's. Because Bowden's receipt of those tax bills in April 1991 marked the beginning of the thirty-day limitations period, his December 1991 letter to the INS was untimely.

Attempting to escape the consequences of his failure to comply with the thirty-day complaint-filing requirement, Bowden relies on two equitable doctrines: tolling and waiver. In Title VII cases, equitable tolling of statutes of limitations can occur in several circumstances. For example, courts have excused parties, particularly those acting *pro se,* who make diligent but technically defective efforts to act within a limitations period. *Irwin,* 498 U.S. at 96, 111 S.Ct. at 457–58. Like other courts, we have excused parties who were misled about the running of a limitations period, whether by an adversary's actions, *id.; see also Gray v. Phillips Petroleum Co.,* 858 F.2d 610, 616 (10th Cir.1988), by a government official's advice upon which they reasonably relied, *Jarrell,* 753 F.2d at 1092, or by inaccurate or ineffective notice from a government agency required to provide notice of the limitations period, *Wilson,* 79 F.3d at 162; *Williams v. Hidalgo,* 663 F.2d 183, 187–88 (D.C.Cir.1980). More generally, and in accord with EEOC regulations, *see* 29 C.F.R. § 1613.214(a)(4) (1991) (recodified as amended at 29 C.F.R. § 1614.604(c) (1996)), we have tolled time limits in Title VII cases when complainants neither knew nor had reason to know about the limit. *Bayer,* 956 F.2d at 334.

Bowden advances several arguments for equitable tolling in his case, only one of which—that the INS failed to give him notice of the thirty-day charge-filing time limit—requires discussion. An agency's failure to give notice does not excuse the un-

timeliness of a complaint, unless the absence of notice misled the complainant about the time limit's operation. Yet Bowden makes no allegation that the INS's failure to give notice misled him. Moreover, we think the agency had no responsibility to notify him in the first place. Although either the Act or EEOC regulations require employing agencies or the Commission to give complainants notice of virtually every other time limit in the Title VII complaint process, *see* 42 U.S.C. § 2000e–16(b)–(c) (1994); 29 C.F.R. §§ 1613.214(a)(1), 1613.217(d), 1613.233(a), 1613.235(b) (1991), they do not require notice of the time limit on allegations of noncompliance with settlement agreements. While giving such notice would have been both sensible and simple—for example, when the INS negotiated the agreement or when it sent Bowden his settlement payment—the agency had no duty to do so.

Bowden's failure to exhaust his administrative remedies in a timely fashion, however, does not end this matter. As in *Brown v. Marsh,* 777 F.2d at 18, for a combination of equitable considerations, we think the INS waived this defense. To begin with, the agency never raised the thirty-day time limit during the administrative proceedings. Although agencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint, *id.* at 15; *see also Boyd v. United States Postal Serv.,* 752 F.2d 410, 414 (9th Cir.1985); *Oaxaca v. Roscoe,* 641 F.2d 386, 390 (5th Cir. 1981), we have suggested that if they not only accept and investigate a complaint, but also decide it on the merits—all without mentioning timeliness—their failure to raise the issue in the administrative process may lead to waiver of the defense when the complainant files suit. *See Saltz v. Lehman,* 672 F.2d 207, 208 (D.C.Cir.1982); *see also Brown,* 777 F.2d at 18 & n. 2 (Starr, J., dissenting); *cf. Boyd,* 752 F.2d at 414; *Scott v. Claytor,* 469 F.Supp. 22, 24 & n. 7 (D.D.C.1978); Fed. R.Civ.P. 12(h)(2) (allowing raising of properly preserved statute of limitations defense through trial). Because the INS responded to the merits of Bowden's complaint without ever questioning its timeliness, we think the agency now has no legitimate reason to com-

plain about a judicial decision on the merits. Had it been concerned that information needed to resolve Bowden's complaint was stale or that deciding his case would upset settled expectations—traditional objectives of statutes of limitations—it could easily have raised the thirty-day limitation during the administrative process. What we have repeatedly stated regarding Title VII exhaustion requirements applies here as well: They are "'practical and pragmatic' . . . and should not be invoked when [they] serve[ ] no practical purpose." *Wilson*, 79 F.3d at 165 (quoting *Brown*, 777 F.2d at 14 (quoting *President v. Vance*, 627 F.2d 353, 363 (D.C.Cir.1980))).

Not only did the INS fail to question Bowden's timeliness during the administrative process, but it did not raise the issue either in response to Bowden's initial suit in district court or later when Bowden took his case to the Court of Claims. Moreover, the government's plainly contradictory responses to those two complaints—asserting before each court that the other had exclusive jurisdiction over Bowden's suit, arguments the Court of Claims denounced as creating a "jurisdictional merry-go-round"—prolonged Bowden's quest for resolution of his complaint by three years.

As in *Brown*, we do not intend to create a sweeping principle concerning waiver of administrative time limits under Title VII. Also as in *Brown*, however, a balancing of equities in this case—where the agency definitively responded to the merits of an employee's complaint without mentioning untimeliness, failed to raise untimeliness until the third round in court, and prolonged the litigation for years by shifting legal positions—leads us to conclude that the INS waived its defense of untimely exhaustion. The time has come for the Government's procedural run-around of Bowden to end and for a court to address his claim on the merits.

### III

Bowden's breach-of-settlement-agreement claim rests on his allegation that he and the INS official with whom he negotiated the settlement orally agreed that the agency would pay all taxes, but that this oral agreement was inadvertently omitted from the written agreement. Arguing that the parol evidence rule bars the court from considering evidence of prior oral agreements, the Government points out that the settlement agreement includes an integration clause, which states that the agreement "sets forth the entire Agreement between the parties . . . and fully supersedes any and all prior agreements or understandings. . . ." Appellee's Br., app. A at 4. The resolution of Bowden's claim thus turns on the proper application of the parol evidence rule. In view of the delay the Government's behavior has already caused, we wish we could resolve this issue now, but we cannot. Whether we rely on District of Columbia law or fashion a rule of federal common law—as have other circuits in interpreting Title VII administrative settlement agreements, *see Brewer v. Muscle Shoals Bd. of Educ.*, 790 F.2d 1515, 1519 (11th Cir.1986); *Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503, 1516–17 (11th Cir.1985); *Snider v. Circle K Corp.*, 923 F.2d 1404, 1407 (10th Cir.1991); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1208–09 (5th Cir.1981)—we are convinced that application of the parol evidence rule turns on a preliminary factual determination, resolution of which requires remand to the district court.

 We reach this conclusion whether we look to District law or to the principles of the *Restatement (2d) of Contracts*, from which we would be inclined to fashion a federal common law rule since those principles represent the "prevailing view" among the states, E.A. FARNSWORTH, FARNSWORTH ON CONTRACTS § 7.3 (1990), and are consistent with the remedial policies of Title VII, *see, e.g., United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 729–30, 99 S.Ct. 1448, 1459, 59 L.Ed.2d 711 (1979). Under both these sources of legal principles, the applicability and scope of the parol evidence rule depend on whether the agreement is integrated, and if so, whether partially or fully. *See* RESTATEMENT (2D) OF CONTRACTS § 213 (1981). Although reducing an agreement to "a writing which in view of its completeness and specificity reasonably appears to be a complete agreement" creates a presumption

that the agreement is integrated, *id.* § 209(3), the ultimate determination of integration is "a question of fact to be determined in accordance with all relevant evidence," *id.* cmt. c, not on the basis of the text of the agreement alone. *See Ozerol v. Howard University,* 545 A.2d 638, 641–42 (D.C.App.1988) (stating same principle as District law); *see also Federal Deposit Ins. Corp. v. Hadid,* 947 F.2d 1153, 1155–56 (4th Cir.1991). While the presence of an integration clause suggests that the agreement is fully integrated, it does not by itself dictate that conclusion.

We therefore remand this claim to the district court to determine whether the agreement between Bowden and the INS is integrated, and if so, whether partially or fully. If the district court finds that the agreement is fully integrated, it may not consider extrinsic evidence about the alleged prior oral agreement, since the subject of that agreement clearly falls "within [the] scope" of the written agreement. *See* RE-STATEMENT (2D) OF CONTRACTS § 213(2). If it finds that the agreement is only partially integrated, then it may consider extrinsic evidence about the alleged oral agreement, but only if it finds the oral agreement consistent with the rest of the writing. *See id.* § 213(1).

### IV

Turning to Bowden's Back Pay Act and Federal Tort Claims Act claims, we affirm the district court's dismissal of both. The Back Pay Act provides, in relevant part, that:

(b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—

(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—

(i) [back pay]

(ii) [attorney's fees]

. . . .

(2)(A) An amount payable under paragraph (1)(A)(i) of this subsection shall be payable with interest.

5 U.S.C. § 5596(b) (1994). According to Bowden, these provisions require that he receive interest on the settlement payment from the INS. We disagree. The Act's text and one of our recent decisions interpreting it make clear that the settlement payment in this case does not fall within the scope of the Act's interest requirement.

As to the statute's text, no "appropriate authority" found that Bowden had been "affected by an unjustified or unwarranted personnel action." *See id.* The EEOC never made such a determination. The only EEOC decision in the record simply concluded that the INS's investigation of Bowden's discrimination complaint had been flawed because the INS misinterpreted the complaint as alleging disparate treatment rather than disparate impact. Without making a finding on the merits, the EEOC remanded the matter to the agency for more complete investigation. Appellant's Br., app. C at 2–4. Nor did the INS ever conclude that Bowden had been improperly passed over for the criminal investigator positions for which he applied. In fact, the settlement agreement specifically disclaims any admission by the agency that it violated Title VII. Appellee's Br., app. A at 1.

Even if the INS or the EEOC had determined that Bowden had suffered an unjustified personnel action, the Back Pay Act still would not apply to his settlement. We have squarely held that the Back Pay Act does not cover denials of discretionary promotions; it covers only denials of otherwise mandatory promotions, such as upgrades required under seniority systems. *Brown v. Secretary of the Army,* 918 F.2d 214, 220–21 & n. 4 (D.C.Cir. 1990); *see also Edwards v. Lujan,* 40 F.3d 1152, 1154 (10th Cir.1994) (adopting same interpretation of Back Pay Act). Although

the employment decisions at issue in Bowden's race discrimination complaint were not, strictly speaking, denials of *promotions*—the criminal investigator positions for which Bowden applied carried a lower GS level than his job as a detention enforcement officer, Appellant's Br., app. C at 1—we believe *Brown* still controls this case. The selection process for the positions for which Bowden applied was competitive, and the agency's hiring decision was discretionary. Bowden does not allege, nor does anything in the record suggest, that his selection for these positions was in any sense mandatory.

[17] Bowden argues that his claim nonetheless falls within the scope of the Back Pay Act because the EEOC decision remanding his discrimination complaint to the INS stated that compliance with the decision was mandatory. This argument reflects a misunderstanding of *Brown 's* holding. Even an EEOC order to promote Bowden would not have brought his claim within the scope of the Back Pay Act. Whether a claim falls within the scope of the Act turns not on the mandatory character of the remedy—agencies must always comply with final EEOC decisions, 29 C.F.R. § 1613.237(a) (1991) (recodified at 29 C.F.R. § 1614.502(a) (1996))—but on the mandatory nature of the denied promotion. Because the promotion denied Bowden was not mandatory, the district court properly dismissed his Back Pay Act claim.

[18] The dismissal of Bowden's claim under the Federal Tort Claims Act also warrants affirmance, though not for the reason given by the district court. The district court based its dismissal of that claim on its earlier dismissal of the identical claim in Bowden's initial suit. Because the earlier dismissal was without prejudice, however, it cannot provide the foundation for the dismissal that is before us now.

[19] By its terms, Bowden's tort claim rests on the first two counts of his complaint. Because we have already found the Back Pay Act count to be meritless, we necessarily conclude that the portion of his tort claim that relies on his Back Pay Act count likewise has no foundation. The remainder of Bowden's tort claim fails because Bowden did not exhaust one of the administrative remedies that function as jurisdictional prerequisites to suit under the Federal Tort Claims Act. *See* 28 U.S.C. § 2675 (1994). Before initiating suit, claimants must "file [with the agency] (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C.Cir.1987). Bowden failed to satisfy the second of these requirements because he never informed the INS of the amount of damages he sought for its alleged failure to bear the entire tax liability on his settlement payment.

We affirm in part, reverse in part, and remand to the district court for proceedings consistent with this opinion.

*So ordered.*