**Daniel M. PERRY, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF STATE, Defendant.**

Civil Action No. 09–638 (RMC).

United States District Court, District of Columbia.

Nov. 17, 2009.

---

Daniel M. Perry, Binghamton, NY, pro se.

Robin Michelle Meriweather, Assistant United States Attorney, Washington, DC, for Defendant.

## MEMORANDUM OPINION

ROSEMARY M. COLLYER, District Judge.

Daniel M. Perry, proceeding *pro se*, sues his former employer, the United States Department of State, for disability discrimination and retaliation under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* Mr. Perry argues that "in late 2005 and early 2006," he was subjected to unlawful harassment because of his bipolar disorder and that this harassment "created a hostile and abusive work environment" and ultimately resulted in his "constructive termination in March 2006." Am. Compl. [Dkt. # 9] ¶¶ 8, 27. The State Department moves to dismiss or in the alternative for summary judgment. *See* Dkt. # 10 & 11. It argues, *inter alia*, that Mr. Perry's discrimination and retaliation claims are time-barred because he was required to initiate contact with an Equal Employment Opportunity counselor at the State Department's Office of Civil Rights within 45 days of each of the alleged dis-

crete unlawful acts, but did not do so until February 6, 2008, nearly two years after Mr. Perry alleges that he was constructively discharged. Mr. Perry concedes that he failed to timely contact an EEO counselor but argues that his failure to do so should be excused under the doctrine of equitable tolling because he was *non compos mentis* during the relevant period of time due to his bipolar disorder.[1] Because there is insufficient evidence that Mr. Perry was *non compos mentis* during the entire time period from March 2006, when Mr. Perry alleges that he was constructively discharged, to February 2008, when Mr. Perry initiated contact with an EEO counselor, the Court will grant the State Department's alternative motion for summary judgment.[2]

## I. FACTS

Mr. Perry was selected to become a Foreign Service Officer in November 2004, and was sworn-in to the Foreign Service on January 10, 2005. In November 2004, Mr. Perry was diagnosed with bipolar disorder, mood disorder, and/or post-traumatic stress disorder. He alleges that he was put on administrative leave in October 2005, that Department agents made harassing telephone calls to his mother and his physicians in January and February 2006, and that this harassment became so intolerable that he was forced to resign on March 9, 2006. Am Compl. ¶¶ 13, 31–32.

Nearly two years later, on February 6, 2008, Mr. Perry initiated contact with an EEO counselor at the State Department's Office of Civil Rights and filed a formal complaint alleging that the Department discriminated against him on the basis of his disability by constructively discharging

---

1. *"Non compos mentis"* is a Latin phrase that literally translates to "not master of one's mind." Black's Law Dictionary 1078 (8th ed. 2004).

2. Because "matters outside the pleadings are presented," the Court will treat the motion "as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). Accordingly, the State Department's motion to dismiss for failure to state a claim will be denied as moot.

him from his employment as Foreign Service Officer. The Department dismissed Mr. Perry's administrative complaint on timeliness grounds in a Final Agency Decision dated July 30, 2008. The Department concluded that Mr. Perry failed to initiate contact with an EEO counselor within 45 days of the constructive discharge, as administrative regulations require federal employees to do, and that Mr. Perry had not provided any legitimate basis to extend that deadline through February 6, 2008. Mr. Perry appealed that decision to the Equal Employment Opportunity Commission, which affirmed the decision and issued a right-to-sue letter on December 19, 2008.

Mr. Perry filed a civil action in this Court on April 7, 2009.[3] In his Amended Complaint, Mr. Perry seeks injunctive and compensatory relief for alleged discrimination and retaliation in violation of the Rehabilitation Act. Pending before the Court is the State Department's motion to dismiss or, in the alternative, for summary judgment. Mr. Perry opposes.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion ... fails to make a showing sufficient to establish the existence of an ele-

ment essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. ANALYSIS

"The Rehabilitation Act of 1973 governs employee claims of handicap discrimination against the Federal Government. Its basic tenet is that the Government must take reasonable affirmative steps to accommodate the handicapped, except where undue hardship would result." *Barth v. Gelb,* 2 F.3d 1180, 1183 (D.C.Cir.1993); *see* 29 U.S.C. § 791(b) (requiring federal employers to take "affirmative action" when making "hiring, placement, and advancement" decisions regarding "individuals with disabilities"). "The exclusive remedy for federal employees alleging that federal agencies engaged in disability discrimination is Section 501 of the Rehabilitation Act, codified at 29 U.S.C. § 791." *Rand v. Geith-*

---

**3.** The Department of State does not dispute Mr. Perry's assertion this action was timely filed.

*ner,* 609 F.Supp.2d 97, 100 (D.D.C.2009) (citing *Taylor v. Small,* 350 F.3d 1286, 1292 (D.C.Cir.2003)). Section 501 prohibits disability discrimination by incorporation of Section 102 and retaliation by incorporation of Section 503 of the Americans With Disabilities Act, 42 U.S.C. §§ 12112 & 12203. *See* 29 U.S.C. § 791(g); *Woodruff v. Peters,* 482 F.3d 521, 527–28 (D.C.Cir.2007). Section 505 of the Rehabilitation Act, codified at 29 U.S.C. § 794a, "allows private litigants to enforce rights under section 501 in suits employing the 'remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–16).'" *Barth,* 2 F.3d at 1183 (quoting 29 U.S.C. § 794a(a)(1)). However, Section 505 "limits judicial review to employees 'aggrieved by the final disposition' of their administrative 'complaint,' thereby mandating administrative exhaustion." *Spinelli v. Goss,* 446 F.3d 159, 162 (D.C.Cir. 2006) (quoting 29 U.S.C. § 794a(a)(1)) (citations omitted). "Such 'jurisdictional exhaustion' . . . may not be excused." *Id.; see also id.* ("a court may not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise") (quotation marks and citations omitted).

 In addition to the Rehabilitation Act's statutory jurisdictional exhaustion requirement, the Equal Employment Opportunity Commission "has established detailed procedures for the administrative resolution of discrimination complaints" by federal employees, "including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the Commission." *Bowden v. United States,* 106 F.3d 433, 437 (D.C.Cir.1997); *see* 29 C.F.R. part 1614. Accordingly, pursuant to EEOC regulations, federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap" "must initiate contact with" an agency EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). Unlike the Rehabilitation Act's statutory jurisdictional exhaustion requirement, "the administrative time limits created by the EEOC [in 29 C.F.R. part 1614] erect no jurisdictional bars to bringing suit." *Bowden,* 106 F.3d at 437; *see also Stewart v. Ashcroft,* 352 F.3d 422, 425 (D.C.Cir.2003) (29 C.F.R. § 1614.105(a)(1) "is not jurisdictional, but more akin to a statute of limitations"). "Rather, functioning like statutes of limitations, these time limits are subject to equitable tolling, estoppel, and waiver." *Bowden,* 106 F.3d at 437; *see also Horton v. Potter,* 369 F.3d 906, 911 (6th Cir.2004) ("The requirement that a federal employee initiate contact with an EEO counselor within 45 days of the alleged [disability] discrimination [in violation of the Rehabilitation Act] is not a jurisdictional prerequisite" and "is subject to waiver, estoppel, and equitable tolling"); *Boos v. Runyon,* 201 F.3d 178, 184 (2d Cir.2000) ("the forty-five day requirement is subject to equitable tolling" in Rehabilitation Act cases).[4]

---

**4.** This result is at odds with *Chavers v. Shinseki,* No. 07–1911, 2009 WL 3644282, at *9 (D.D.C. Nov. 5, 2009), insofar as it holds that the EEOC's 45–day time limit in 29 C.F.R. § 1614.105(a)(1) cannot be equitably tolled in Rehabilitation Act cases. It is true that statutory jurisdictional time limits are not subject to equitable tolling, *see, e.g., Slinger Drainage, Inc. v. EPA,* 237 F.3d 681, 682 (D.C.Cir.2001), and that the requirement of a final disposition of an administrative complaint in Section 505 of the Rehabilitation Act is jurisdictional, *Spinelli,* 446 F.3d at 162. However, the 45–day time limit is a regulatory requirement promulgated by the EEOC under Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, and the D.C. Circuit has held that EEOC regulations promulgated under Section 717 are not jurisdictional. *See Stewart,* 352 F.3d at 425; *Bowden,* 106 F.3d at

## A. The Court Has Jurisdiction Over the Rehabilitation Act Claims

■ The Court has jurisdiction over Mr. Perry's Rehabilitation Act claims because he exhausted the statutory procedure in Section 505 by awaiting a final disposition of his administrative complaint before filing suit. *See* 29 U.S.C. § 794a(a)(1); *Spinelli*, 446 F.3d at 162. The Rehabilitation Act requires nothing more. *See Spinelli*, 446 F.3d at 162 ("jurisdiction" under the Rehabilitation Act depends "on the 'final disposition of [an administrative] complaint'") (quoting 29 U.S.C. § 794a(a)(1)) (alterations in original). That the Department of State rejected Mr. Perry's administrative complaint as untimely because he failed to initiate contact with an EEO counselor within 45 days as 29 C.F.R. § 1614.105(a)(1) requires, does not mean that the Court lacks jurisdiction because "there was no administrative complaint and thus no final disposition of one." *Id.; but see Chavers*, 2009 WL 3644282, at *8. The State Department finally disposed of Mr. Perry's administrative complaint before Mr. Perry filed suit. Therefore, Mr. Perry exhausted all of the statutory jurisdictional prerequisites to a Section 501 suit. *See Spinelli*, 446 F.3d at 162. Mr. Perry's failure to comply with the EEOC's 45–day time limit in 29 C.F.R. § 1614.105(a)(1) does not divest the Court of statutory jurisdiction under Section 505 of the Rehabilitation Act. *See Bowden*, 106 F.3d at 437.

## B. There is Insufficient Evidence that Mr. Perry was *Non Compos Mentis* During the Entire Time Period From March 2006 to February 2008

■ Because untimely exhaustion of the EEOC's administrative requirements in 29 C.F.R. part 1614 is an affirmative defense, the defendant bears the burden of proof. *Bowden*, 106 F.3d at 437. "If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving the facts supporting equitable avoidance of the defense." *Id.* It is undisputed that Mr. Perry failed to initiate contact with a Department of State EEO counselor within 45 days of each of the acts he alleges to be discriminatory and/or retaliatory. Therefore, he "bears the burden of pleading and proving any equitable reasons for failing to meet the 45–day time limit to contact the agency's EEO counselor." *McCants v. Glickman*, 180 F.Supp.2d 35, 40 (D.D.C.2001); *see also Saltz v. Lehman*, 672 F.2d 207, 209 (D.C.Cir.1982). "To avoid summary judgment," Mr. Perry "must show the existence of evidence sufficient to permit a reasonable conclusion that the statute of limitations should have been equitably tolled." *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C.Cir.1998).

■ "Equitable tolling permits a plaintiff to avoid the bar of the limitations period if despite all due diligence she is unable to obtain vital information bearing on the existence of her claim." *Id.* "Using District of Columbia law as touchstone, the doctrine can fairly be read to encompass cases where a plaintiff has been unable to obtain such information because of disability." *Id.* (citations omitted). However, Mr. Perry's "hurdle is high." *Id.* " 'The court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances.' " *Id.* at 579–80 (quoting *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C.Cir.1988)). "District of Columbia law provides that a person who is *non compos mentis* and who has failed to file a legal action in a timely fashion may bring the action 'within the time limited after the disability is removed.' " *Id.* at 580 (quoting

437. Therefore, the undersigned comes to a different conclusion.

D.C.Code § 12–302). The D.C.Code provides that when a person is *non compos mentis* "at the time the right of action accrues," "he or his proper representative may bring action [sic] within the time limited after the disability is removed." D.C.Code § 12–302(a)(2).

"The code does not itself define *non compos mentis*, but 'the phrase *non compos mentis* generally refers to someone incapable of handling her own affairs or unable to function in society.'" *Smith–Haynie*, 155 F.3d at 580 (quoting *Hendel v. World Plan Executive Council*, 705 A.2d 656, 665 (D.C.1997)); *see also Oparaugo v. Watts*, 884 A.2d 63, 73 (D.C.2005) ("The term, *non compos mentis*, means generally one who is not capable of handling his own personal affairs or who cannot function in society"). "'Impaired judgment alone is not enough to toll the statute of limitations.'" *Smith–Haynie*, 155 F.3d at 580 (quoting *Hendel*, 705 A.2d at 665). "The disability of a person claiming to be *non compos mentis* must be 'of such a nature as to show she is unable to manage her business affairs or estate, or to comprehend her legal rights or liabilities.'" *Id.* (quoting *Decker v. Fink*, 47 Md.App. 202, 422 A.2d 389, 392 (Md.1980)). "Equitable tolling is only appropriate on *non compos mentis* grounds when a plaintiff 'is completely incapable of handling his affairs and legal rights.'" *Miller v. Rosenker*, 578 F.Supp.2d 67, 72 (D.D.C.2008) (quoting *Gupta v. Northrop Grumman Corp.*, 462 F.Supp.2d 56, 59 (D.D.C.2006)). "It is not sufficient to show that a plaintiff was 'preoccupied, depressed, and obsessed with the events' he was experiencing." *Id.* (quoting *Gupta*, 462 F.Supp.2d at 60).

Mr. Perry avers in his Amended Complaint that he "suffered from a Mood Disorder, Not Otherwise Specified, or a case of Post Traumatic Stress Disorder, either of which caused Plaintiff to have a diminished capacity for stress, unstruc-

tured environments, critical thinking, reasoning, and balancing any number of external forces." Am. Compl. ¶ 13. In support of his argument that this disorder rendered him *non compos mentis*, Mr. Perry filed the affidavit of Dr. Albert Wolkoff. *See* Am. Compl., Ex. 2 ("Wolkoff Aff."). Dr. Wolkoff opines that "[u]ntil January 2008, Mr. Perry was, in my professional opinion, not mentally stable" and "did not possess the mental faculties to understand the background or place into context the basic facts surrounding his alleged complaint." Wolkoff Aff. ¶¶ 3 & 7. However, under D.C. law, Mr. Perry must show that he was *non compos mentis* "at the time the right of action accrues." D.C.Code § 12–302(a)(2). Mr. Perry's right of action accrued no later than March 9, 2006, the date he alleges that he was constructively discharged, *see* Am. Compl. ¶ 13, and he was required to initiate contact with an EEO counselor no later than April 24, 2006, *see* 29 C.F.R. § 1614.105(a)(1). Dr. Wolkoff has no basis to opine on Mr. Perry's mental state between March 9, 2006 and April 24, 2006 because Mr. Perry did not come under Dr. Wolkoff's care until August 29, 2006. *See* Wolkoff Aff. ¶ 2 (Mr. Perry "has been under my care from August 29, 2006 until July 29, 2008"). Thus, Dr. Wolkoff's medical opinion is not probative of Mr. Perry's mental state either at the time that Mr. Perry's right of action accrued in March 2006 or at the time that Mr. Perry was required to initiate contact with an EEO counselor in April 2006.

Because Mr. Perry has produced no evidence that he was *non compos mentis* between March 9, 2006 and April 24, 2006, he has not "show[n] the existence of evidence sufficient to permit a reasonable conclusion that the statute of limitations should have been equitably tolled." *Smith–Haynie*, 155 F.3d at 579. That Mr.

Perry may have suffered from bipolar disorder, mood disorder, and/or post-traumatic stress disorder in March and April 2006 is not evidence that he was non compos mentis. *See Miller*, 578 F.Supp.2d at 71 ("Suffering from a severe panic disorder and depression is not evidence of the type of total incapacity necessary to warrant equitable tolling."); *Speiser v. HHS*, 670 F.Supp. 380, 385 (D.D.C.1986) ("While plaintiff clearly suffers from a legitimate mental illness, she has failed to demonstrate that it disabled her to the requisite degree."). Mr. Perry has not produced evidence that he "was ever adjudged incompetent, signed a power of attorney, had a guardian or caretaker appointed, or otherwise took measures to let someone else handle [his] affairs such as might be done for someone who is non compos mentis." *Speiser*, 670 F.Supp. at 385.

Furthermore, Mr. Perry's own conduct belies his assertion that he was *non compos mentis* during the entire time period from March 2006 to February 2008. In November 2007, Mr. Perry applied to take the foreign service examination. *See* Def.'s Reply [Dkt. # 23], Ex. 1 (Decl. of Sara A. Rosenberry) ¶ 2 (filed under seal). While Mr. Perry was not selected to sit for the oral assessment, he passed both the multiple choice and essay portions of the written examination. *See id.* ¶ 3. Because Mr. Perry was mentally capable of applying for and passing the written portion of the foreign service examination, the evidence does not permit a reasonable conclusion that he was "incapable of handling [his] own affairs or unable to function in society" during the entire time period from March 2006 to February 2008. *Smith–Haynie*, 155 F.3d at 580.

Mr. Perry's correspondence with State Department officials in December 2007 further demonstrates that he was mentally capable of initiating contact with an EEO counselor prior to February 2008. Mr.

Perry admits that on December 17, 2007, he drafted a letter to Ambassador Harry K. Thomas, Jr., the Director General of the Foreign Service and Director of Human Resources, in which he complained that "I was forced to resign … because I was mentally ill" and that "I believe this amounts to discrimination and constitute[s] a violation of the Americans with Disabilities Act." Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss or for Summ. J. [Dkt. # 21] at 13 (filed under seal). While Mr. Perry characterizes the letter as a "rambling, desperate, and frightened communication to Ambassador Thomas" and proffers it as evidence that he was "emotionally unstable," *id.*, the letter undermines Mr. Perry's assertion that he was *non compos mentis* because it shows that he perceived the employment actions to have been unlawful. *See Loe v. Heckler*, 768 F.2d 409, 418–19 (D.C.Cir.1985) ("The time within which EEO counseling must be sought" may only be tolled "until the claimant knows or has reason to know the facts that would support a charge of discrimination"). That the letter may also show that Mr. Perry was "confused," *see* Pl.'s Opp'n at 13, is immaterial because "complete comprehension is not required for a court to enforce deadlines." *Miller*, 578 F.Supp.2d at 73.

## IV. CONCLUSION

Because Mr. Perry did not produce evidence that he was completely incapable of handling his affairs and legal rights between March 9, 2006 and February 6, 2008, he has failed to prove that he was *non compos mentis* such that the 45–day time limit for contacting an EEO counselor should be equitably tolled. Accordingly, the State Department's alternative motion for summary judgment will be granted on the basis that Mr. Perry's discrimination and retaliation claims under the Rehabilitation Act are time-barred. A memorializ-

ing Order accompanies this Memorandum Opinion.