## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,

v.

## The HENRY BECK COMPANY, Appellee.

### No. 83–1016.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1983.

Decided March 7, 1984.

---

**302**

Justine S. Lisser, Washington, D.C. (David L. Slate, Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, Washington, D.C., on brief), for appellant.

Edward J. Gutman, Baltimore, Md. (Rochelle S. Eisenberg, Blum, Yumkas, Mailman & Gutman, P.A., Baltimore, Md., Larry Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., on brief), for appellee.

Before WINTER, Chief Judge, PHILLIPS and ERVIN, Circuit Judges.

ERVIN, Circuit Judge.

The Equal Employment Opportunity Commission (the Commission) brought this action in the United States District Court for the District of Maryland seeking specific performance and consequential damages from the Henry C. Beck Co. for allegedly breaching a pre-determination settlement agreement entered into between the Commission, Beck, and a former employee of Beck's, Donna L. Black. Pursuant to F.R. Civ.P. 12(b)(1), Beck filed a motion to dismiss for lack of subject matter jurisdiction.

The district court granted the motion on the ground that § 706(f)(1) of Title VII [1] requires investigation, reasonable cause determination, and attempts at conciliation before a federal court may exercise jurisdiction over a suit brought by the Commission under Title VII.

On appeal, the Commission argues that Title VII's general jurisdictional provision, § 706(f)(3) [2], allows for federal jurisdiction over actions to enforce pre-determination settlement agreements. Because we agree that § 706(f)(3) provides a basis for jurisdiction in this case, we reverse the district court and remand for further proceedings.

## I.

On March 28, 1980, Donna L. Black filed a charge with the Commission claiming that the Henry Beck Company had discriminated against her on the basis of her race when it denied her a full-time secretarial position and discharged her from her part-time position. On May 9, 1980, before the Commission issued a reasonable cause determination, the parties and the Commission signed a settlement agreement. Paragraph 2c of the agreement, the subject of this action, provided in relevant part that for six months Beck would "reserve the next available vacancy for the position of Secretary at Henry C. Beck's downtown location ..." for Black. In exchange for Beck's agreement, Black agreed not to bring suit and the Commission promised it would not use Black's "charge as the jurisdictional basis for a civil action under Section 706(f)(1) of Title VII."

The Commission alleges in its complaint that Beck Co. breached paragraph 2c of the settlement agreement by failing to offer Black the first available position as secretary. The Commission's prayer for relief requests the district court to issue injunctive orders requiring Beck Co. to comply with paragraph 2c by offering Black the next available secretarial position. Additionally, it requests the court to order back

---

**1.** 42 U.S.C. § 2000e–5(f)(1)

**2.** 42 U.S.C. § 2000e–5(f)(3)

and front pay as damages for Beck's failure to comply with the settlement agreement and to award the Commission costs.

## II.

The statutory framework for processing unfair employment practice charges filed with the Commission is set forth in § 706(b) of Title VII.[3] When a charge against an employer is filed, the Commission is to serve notice on the employer and make an investigation of the allegations. If, after investigation, the Commission determines that there is not reasonable cause to believe the allegations are true, it must dismiss the charge and notify all parties. If, on the other hand, the Commission determines there is reasonable cause, it must initially try to eliminate the alleged unlawful employment practice through conciliation and persuasion. Should the Commission fail to secure an acceptable conciliation agreement from the employer within thirty days after the charge is filed, it may bring suit in a United States District Court under § 706(f)(1) alleging an unlawful employment practice.

The settlement agreement in this case was reached pursuant to the Commission's "Rapid Charge Processing System" adopted in 1977. This system, which is designed to encourage pre-investigation stipulations and settlements, was the Commission's response to an increasing backlog of charges resulting from time consuming investigations.[4] The new system has had considerable success in increasing the percentage of claims settled and in reducing the number of investigations needed.[5]

The Commission's regulations[6] reflect the changes in post-filing procedures brought about by the Rapid Charge Processing System. Specifically, 29 C.F.R. § 1601.20 provides that "[p]rior to the issuance of a determination as to reasonable cause the Commission may encourage the parties to settle the charge on terms that are mutually agreeable .... The Commission shall limit its undertaking in such settlements to an agreement not to process that charge further...."

Despite the statutory emphasis on conciliation and the regulations authorizing pre-determination settlements, Congress did not explicitly provide for federal enforcement of negotiated settlements involving the Commission as a party. Section 706(f)(3) does generally provide for federal jurisdiction over "actions brought under" Title VII, but the question remains whether a suit brought to enforce a pre-determination settlement agreement is one brought directly under Title VII.[7] To answer this question, we will examine the role of Commission initiated settlements in the Title VII statutory scheme.

## III.

Encouraging voluntary compliance with Title VII is among the Commission's most

---

3. 42 U.S.C. § 2000e–5(b).

4. The backlog had grown from 2300 charges after the first year of the Commission's operation, to 106,700 charges still pending at the end of Fiscal Year 1975. EEOC Tenth Annual Report FY 1975 at 33.

5. In its first year, the new system resulted in an increase in settlements and conciliations from 14 percent of all claims under old procedures to 48 percent under the new system. Hearings Before the Subcommittee on Employment Opportunities, House Committee on Labor and Education, 95 Cong.2d Sess. Nov. 1978 (Testimony of Eleanor Holmes Norton) at 6. In fiscal year 1980, 46 percent of all Title VII charges were settled—13,363 by negotiated pre-determination settlements (PDS) and 2,725 by other means. EEOC 15th Annual Report FY 1980, at 36.

6. 29 C.F.R. § 1601.19–1601.22.

7. Although we have held that investigation, determination of reasonable cause, and an effort at conciliation were jurisdictional prerequisites to a civil action brought by the Commission, *EEOC v. American National Bank*, 652 F.2d 1176, 1185 (4th Cir.1981), *cert. denied*, 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982), we reached that decision in the context of an unfair employment practice charge lodged pursuant to § 706(f)(1). These prerequisites clearly do not apply to a § 706(f)(2) civil action for preliminary relief. Moreover, § 706(f)(3) mentions no prerequisite in broadly providing for federal district court jurisdiction over "actions brought under" Title VII.

essential functions. *See EEOC v. Raymond Metal Products Co.,* 530 F.2d 590, 596 (4th Cir.1976); *Patterson v. American Tobacco Co.,* 535 F.2d 257, 272 (4th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976). Indeed, when the Commission was created in 1964, it had power only to investigate complaints and negotiate voluntary compliance. Not until Congress amended the Act in 1972 did it give the Commission authority to seek federal court enforcement of Title VII. *See EEOC v. Cleveland Mills Co.,* 502 F.2d 153, 155 (4th Cir.1974), *cert. denied,* 420 U.S. 946, 95 S.Ct. 1328, 43 L.Ed.2d 425 (1975). In *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974), the Supreme Court stated that:

> Cooperation and voluntary compliance were selected as the preferred means for achieving this goal [of assuring equality of economic opportunity]. To this end, Congress created the Equal Employment Opportunity Commission and established a procedure whereby existing state and local equal employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit.

The importance of settlements to Title VII's statutory scheme is reflected in two recent Court of Appeals decisions holding that a suit brought by the Commission to enforce a post-determination conciliation agreement is one brought directly under Title VII with federal jurisdiction provided by § 706(f)(3). In *EEOC v. Liberty Trucking Co.,* 695 F.2d 1038 (7th Cir.1982), the Seventh Circuit noted that Congress did not explicitly provide for federal enforcement of conciliation agreements, but the court found that Title VII's statutory emphasis on voluntary compliance "will be undermined by a holding that the federal courts lack jurisdiction over suits seeking enforcement of conciliation agreements."

695 F.2d at 1043. The court concluded that the potentially conflicting standards the Commission could face if enforcement were left solely to state courts might "inadvertently undermine Congress' commitment to conciliation." 695 F.2d at 1044. It therefore held that:

> ... an EEOC action to enforce a conciliation agreement is an action brought directly under Title VII, and the federal district courts have jurisdiction over such actions.

*Id.*

The Fifth Circuit in *EEOC v. Safeway Stores,* 714 F.2d 567 (5th Cir.1983) did not share the Seventh Circuit's concern with the adequacy of state enforcements, but it agreed that federal jurisdiction may be "predicated upon the primacy of conciliation to the Title VII statutory scheme." 714 F.2d at 572. The court stated:

> ... it would be illogical to conclude that Congress intended exclusive state jurisdiction, that there be *no* federal jurisdiction to consider or enforce the voluntary agreements it designated as the primary means of accomplishing its goal of eliminating employment discrimination. We hold, therefore, that federal jurisdiction to enforce conciliation agreements exists directly under Title VII by means of 42 U.S.C. § 2000e–5(f)(3). We agree with the court below that the usefulness of conciliation agreements as vehicles for voluntary resolution of employment discrimination charges would be "significantly reduced" if the agreements were not enforceable in the forum which is most familiar with Title VII litigation.

714 F.2d at 573 (footnote omitted). *See also EEOC v. Mississippi Baptist Hospital,* 12 FEP Cases 411, 412 (S.D.Miss.1976) ("critical nature of conciliation agreements in the enforcement of Title VII" supports exercise of jurisdiction to enforce conciliation agreements under § 706(f)(3) and 28 U.S.C. §§ 1337 and 1343(4)).[8]

---

8. Many other federal courts have exercised jurisdiction over enforcement suits without discussion of the issue. *See, e.g., EEOC v. Contour Chair Lounge Co.,* 596 F.2d 809 (8th Cir.1979)

(jurisdiction to enforce conciliation agreement assumed under Title VII); *Brito v. Zia Co.,* 478 F.2d 1200 (10th Cir.1973) (damages awarded for breach of conciliation agreement without dis-

## IV.

Pre-determination settlement (PDS) agreements are no less effective in facilitating the Commission's essential role as a mediator than conciliation agreements. By allowing more frequent settlements, the PDS saves resources that might otherwise be consumed in litigation and furthers the statutory goal of voluntary compliance. In addition, it enhances the aim of rapidly resolving disputes by encouraging early resolution before the Commission is required to expend time in investigations and reasonable cause determinations.

This latter feature is the sole factor distinguishing the PDS from conciliation agreements, and it is this distinction that has led one circuit to conclude that PDS agreements, as opposed to conciliation agreements, may not be enforced in federal court.[9] In *EEOC v. Pierce Packing Co.*, 669 F.2d 605 (9th Cir.1982), *rehearing denied* June 9, 1982 (decided before *Liberty Trucking* or *Safeway Stores* ), the Ninth Circuit held that although the Commission could resolve charges through a PDS, the regulation allowing such resolutions "does not permit court involvement predicated on breach of a settlement agreement, absent reasonable cause determination and good faith attempts at conciliation." 669 F.2d at 608. The court distinguished conciliation agreements from the PDS by noting that the former followed investigation, determination of reasonable cause and attempts at conciliation. The court held that § 706(f)(3) was insufficient to sustain jurisdiction because to so hold would allow the Commission to use PDS agreements to "leapfrog" jurisdictional requirements when Title VII violations were charged.

Although the court in *Pierce Packing* framed its holding in broad terms, the facts of that case distinguish it from the situation now under consideration. In *Pierce Packing*, Pierce settled by agreeing to post job vacancies, let women bid on jobs, trans-

fer seniority for women who switched jobs, and implement an affirmative action program. Two years later, the Commission conducted a compliance review finding continued sex discrimination. Specifically, the review revealed sex segregated departments and job classifications with resulting pay disparity and discriminatory layoff policy. 669 F.2d at 606. The Commission then filed a complaint alleging that Pierce intentionally engaged in unlawful employment practices in violation of Title VII. 669 F.2d at 607. Thus, in *Pierce Packing* the Commission did try to "leapfrog" the jurisdictional prerequisites of § 706(f)(1). Although on appeal in *Pierce Packing*, the Commission may have argued in the alternative for specific enforcement, *see* 669 F.2d at 608, the complaint which was dismissed did not so limit itself.

In contrast, the Commission in this case seeks enforcement of a specific agreement without any ruling on the underlying charge of intentional employment discrimination. The damages sought arise from the breach of the agreement rather than from a generalized employment discrimination charge, and unlike the Commission's complaint in *Pierce Packing*, the complaint below does not seek to change Beck's general hiring or promotion practices. In a case such as the one before us, there is no reason to distinguish PDS agreements from conciliation agreements. Both promote the statutory goal of voluntary compliance and neither subverts other provisions of Title VII.

## V.

We hold that where an employer allegedly breaches a pre-determination settlement agreement after voluntarily entering into it, and the Commission seeks enforcement of that agreement only, without attempting to litigate the underlying unfair employment practice charge, the suit is brought directly under Title VII, and the United

---

cussion of jurisdiction); *EEOC v. Labor Health Institute,* 17 FEP Cases 250 (E.D.Mo.1978) (jurisdiction to enforce conciliation agreement assumed without discussion).

**9.** *EEOC v. Pierce Packing, see infra.* The Ninth Circuit is the only circuit that has addressed the question of whether PDS agreements may be enforced in federal court.

States District Courts have jurisdiction under § 706(f)(3).[10] This holding is consistent with our decisions allowing enforcement of settlement agreements under the National Labor Relations Act.[11] *See, e.g., Poole Foundry & Machine Co. v. NLRB,* 192 F.2d 740 (4th Cir.1951). In *George Banta Co. v. NLRB,* 604 F.2d 830, 838 (4th Cir. 1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980), we stated that "[t]o permit a party to accept the benefits of a settlement agreement, and then withdraw from that agreement without complying with its corresponding obligations, would subvert the settlement process." We now agree with a similar conclusion reached by the district court in *EEOC v. Cleveland State University,* 28 FEP Cases 441, 444 (N.D.Ohio 1982) which stated:

> To prohibit the EEOC from summarily enforcing pre-determination settlements would allow an employer to engage in dilatory tactics which would frustrate the congressional intent of rapid resolution of disputes. If the EEOC had to pursue the usual process [of investigation and reasonable cause determination] before enforcing a pre-determination settlement, such agreements would be meaningless.

Exercising jurisdiction in this case does not allow the Commission to leapfrog the jurisdictional prerequisites to a § 706(f)(1) action alleging unfair employment practices, nor does it undermine those prerequisites. The requirements of investigation, determination of reasonable cause, and attempts at conciliation serve to protect employers from frivolous or premature unfair employment practice suits brought by the Commission. This function is not affected by our holding. Enforcement of the settlement agreement in this case will not involve litigation of the underlying unfair employment practice charge; it will be limited to issues of contract law. Federal jurisdiction is extended to this case not because it involves a violation of Title VII but because it is essential to preserving the EEOC's function as an efficient conciliator, a function that is central to Title VII's statutory scheme. *Cf. Safeway's Stores,* 714 F.2d 567; *Liberty Trucking,* 695 F.2d 1038. Accordingly, we reverse the district court's order dismissing the suit and remand for further proceedings.

REVERSED AND REMANDED.

---

10. Because we hold the court below had jurisdiction under § 706(f)(3), we decline to address the question of whether 28 U.S.C. §§ 1331 and 1345 provide additional bases for jurisdiction.

11. 29 U.S.C. § 151 *et seq.*