Teresa OWENS, Plaintiff,

v.

Togo D. WEST, Jr., Secretary Department of Veteran Affairs, Defendant.

No. 99–11421–NG.

United States District Court, D. Massachusetts.

Oct. 18, 2001.

Teresa L. Owens, Brockton, MA, Pro se.

John H. Cunha, Jr., Cunha & Holcomb, PC, Boston, MA, for Plaintiff.

Gina Y. Walcott, Gina Y. Walcott–Torres, U.S. Attorney's Office, Nancy Rue, Assistant U.S. Attorney, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

GERTNER, District Judge.

This is an action to enforce an Equal Employment Opportunity Commission ("EEOC") Settlement Agreement ("the Agreement") executed between the plaintiff, Teresa Owens ("Owens"), and the Department of Veteran Affairs ("DVA") on May 11, 1995.[1]

■ Owens, who works part-time as a nurse for the DVA, filed a complaint with the EEOC on October 8, 1993, alleging that DVA Associate Director Roland Moore made discriminatory remarks to her at two meetings, used inappropriate body language of a sexually suggestive nature in her presence, and failed to adhere to reasonable disability accommodations as set forth by the Department of Labor ("DOL"). The complaint was settled before any determination of probable cause.[2] Under the terms of the Agreement, the plaintiff received a series of accommodations, including flexible employment start times, rest periods, and work days, as well as assorted ergonomic concessions to alleviate her restricted mobility. In addition, the Agreement called for a grade and pay increase from Nursing Assistant to Nurse II (Registered Nurse), retroactive to February 1, 1993, which would mean Owens would receive a lump sum payment. The present dispute concerns the latter portion of the Agreement.

Although the settlement agreement was only between DVA and Owens, some of its provisions affected money Owens anticipated from the DOL as well, as part of a DOL disability payment scheme. Owens contends that the DVA breached the Agreement by doing the following: (1) failing to notify the DOL that she was in the Nurse II category rather than Nurse Assistant, within six weeks of execution of the Agreement; (2) and, when they finally notified the DOL in a July 1, 1997 letter, they gave the DOL the wrong information—that the plaintiff was "promoted" to a Nurse II category on February 1, 1993, rather than stating that she was "in" that category as of that date. (Owens claims that the DVA's phrasing affected the amount of reimbursement she received from the DOL.) Moreover, she alleges that the DVA also provided the DOL with incorrect pay rate information pertaining to her. She argues that no genuine material dispute exists as to the DVA's liability for breaching the Agreement and requests that this Court enter summary judgment in her favor as to the liability portion of her contract claims, leaving only issues of damages for trial.

The DVA has opposed the motion, contending that it fully complied with the letter, spirit, and intent of the Agreement.

1. Togo West, the Secretary of the DVA, is the only proper defendant in an action against the DVA under Title VII. *See* 42 U.S.C. § 2000e–16(c); *Soto v. United States Postal Service*, 905 F.2d 537 (1st Cir.1990) (discrimination cases brought under Title VII against a federal agency may be brought only against the "head of the department, agency, or unit").

2. This has been called a pre-determination agreement, rather than a conciliation agreement. The pre-determination agreement takes place before the EEOC has investigated the complaint and determined whether there is probable cause to credit it. In contrast, the conciliation agreement occurs after probable cause has been found and the EEOC attempts to settle the matter. *Ruedlinger v. Jarrett*, 106 F.3d 212, 214 n. * (7th Cir.1997).

In any event, it suggests that the relevant language of the Agreement is sufficiently ambiguous to withstand judgment as a matter of law in favor of the interpretation advanced by the plaintiff.

Furthermore, the DVA has filed a Motion to Dismiss the Amended Complaint on the following grounds: (1) if counts I (breach of contract, seeking damages) and II (breach of contract, seeking specific performance) are claims cognizable under Title VII, they must be dismissed because Owens failed to notify the EEOC Director, in writing, of any alleged noncompliance within 30 days of when she knew or should have known of any breach; (2) count IV (retaliation for bringing an EEOC complaint) is barred because the plaintiff did not exhaust EEOC administrative remedies; (3) if counts I, II, and III (claim for equitable relief; mutual mistake) are characterized as common-law causes of action, then they must also be dismissed because there is no independent basis on federal jurisdiction; and, (4) to the extent that Owens seeks to hold the DVA liable for the DOL's failure to compensate her, those claims must be dismissed both because the DVA is an independent body with no authority over the actions of the DOL and because the DVA fully discharged its duties under the Agreement when it informed the DOL of the plaintiff's increased pay rate and new employment status on July 1, 1997.

With respect to the motion to dismiss: I DENY the defendant's motion to dismiss counts I and II. I conclude that these counts are Title VII claims, enforceable in federal court and not subject to dismissal on the grounds of timeliness. The record is not at all clear as to when the plaintiff knew or should have known that the DVA breached the Agreement, triggering any deadlines. Moreover, to the extent that Owens may have failed to timely exhaust her administrative remedies on these counts the DVA waived its right to assert the timeliness defense with this Court by failing to raise it at any point during the administrative process. Count III remains as a common law cause of action for equitable relief, pendent to the existing federal claims.

With respect to count IV, however, the retaliation claim, defendant's motion is **ALLOWED** due to the plaintiff's failure to exhaust her Title VII administrative remedies.[3]

With respect to plaintiff's motion for partial summary judgment, it is **DENIED**. I agree that there are genuine issues of material fact as to the DVA's liability for breach to withstand summary judgment.

Accordingly, for the reasons elaborated below, the defendant's Motion to Dismiss the Plaintiff's Amended Complaint [docket entry # 25] is **GRANTED** in part and **DENIED** in part and the plaintiff's Motion for Partial Summary Judgment [docket entry # 12] is **DENIED**.

## I. FACTUAL BACKGROUND

On September 14, 1986, Owens suffered a severe on-the-job spinal injury. Compensation for the injury was to come from both the DVA and the DOL. For the first 45 days following her injury, the DVA paid Continuation of Pay ("COP") disability benefits. Beginning in late October of that year, she began to receive additional disability benefits through the DOL's Office of Workers' Compensation Programs ("DOL–OWCP") pursuant to the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101. But those benefits, she

---

**3.** Defendant's remaining argument, concerning the authority of the DVA and whether or not it fully complied with its obligations under the Agreement, is more in the nature of a summary judgment argument, addressed under that rubric.

claimed, were computed based on her former Nursing Assistant pay, rather than the higher Registered Nurse pay.

Owens has continued to work as a nurse for the DVA since 1986, most frequently on a part-time basis. As a disabled Federal employee who works an intermittent schedule, Owens continued to be partially compensated throughout this period by *both* the DVA and the DOL.

Seven years later, on October 8, 1993, Owens filed a complaint with the EEOC alleging sex and disability discrimination against the DVA. In the 1993 complaint, Owens requested the following relief: (1) an award of back pay dating back to 1986, the date of her accident, when Owens claimed that her pay was incorrectly calculated at the level of a Nursing Assistant, rather than Registered Nurse; (2) elevation to the appropriate Registered Nurse grade and step; and, (3) reasonable accommodations for her handicap.

On May 11, 1995, the parties resolved Owens' complaint prior to any EEOC probable cause determination by executing a handwritten agreement. Thirteen of the fifteen paragraphs of the Agreement concern the DVA's treatment of and accommodations to Owens' disability during work hours. Relevant to this action, the Agreement contains the following provisions to address her salary concerns:

> There shall be a retroactive grade and pay increase, dating back to February 1, 1993 to the Nurse II, Step 3 position. The retroactive monies shall be issued to Ms. Owens within approximately 6 wks from the date of this agreement [hereinafter "Paragraph 1"].[4]

For all purposes, including formal change of her personnel record and representations to the Department of Labor, the V.A. shall state that Teresa Owens is in the Nurse II category [hereinafter "Paragraph 2"].

On July 11, 1995, the DVA issued a Board Action, approving the change in Owens' status to the agreed-upon status, effective February 1, 1993. Within three months from the date of execution of the Agreement, Owens received a lump-sum check from the DVA in the amount of $3,686.17, representing the amount owed to the plaintiff from the DVA. Significantly, Owens received no money from the DOL at that time.

On July 12, 1996, DVA employee Kim Rothstein ("Rothstein") informed DVA Claims Administrator Donna Holmes ("Holmes") that plaintiff's salary was $38,541, which Owens contends was in error. Her salary as a Registered Nurse was actually $48,342.

On October 18, 1996, Owens wrote a letter to Holmes complaining that the DOL was "thousands of dollars behind in compensation" to her. Furthermore, Owens disclosed to Holmes her suspicion that the DVA intentionally ignored her previous inquiries and complaints as to errors in payment.

On November 24, 1996, Owens wrote a letter to her immediate DVA supervisor, Lynn Canavo, to advise her that her personnel files from the DOL included a form filed by Rothstein which sets forth an erroneous pay-rate. Owens also communicated her belief that the DVA had failed to meet their obligation "to notify the DOL

---

4. Owens was apparently promoted to Registered Nurse as of October 12, 1986. Exhibit F, Plaintiff's Exhibit (Letter dated November 6, 1986 from Smith Jenkins, Jr., Medical Center Director, Veteran's Administration to Teresa L. Owens). She passed the appropri-

ate Board examinations and was recommended to the Registered Nurse position on September 4, 1986, but that recommendation did not become effective until October 12, 1986 because of budgetary constraints.

that [she] was in the Nurse II category effective Feb. 1, 1993, which would have changed [her] compensation rate as a result."

On January 10, 1997, at the plaintiff's request, a meeting was held at the Brockton Veterans Administration Medical Center between Owens, the plaintiff's mother, Dorothy Price, and several DVA employees. At the meeting, Owens was provided the forms with which to file a complaint with the Office of Special Counsel regarding the issues discussed. She was not provided with forms for filing an EEOC Complaint.

On May 8, 1997, another meeting was held with Owens and representatives of the DVA, the EEOC, and the plaintiff's union to discuss the alleged breach of the Agreement. A week and a half later, on May 19, 1997, Owens and her newly obtained counsel, Chuck Mathers, met with representatives of the DVA again to discuss their alleged noncompliance with the Agreement. Attorney Mathers followed up this meeting with a May 26 letter to the DVA, giving written notice pursuant to 29 C.F.R. § 1614.504 of Owens' request for reinstatement of her EEOC complaint and seeking compensation for losses suffered by the plaintiff as a result of the alleged breach of the Agreement.

On July 1, 1997, nearly two years after the agreement, the DVA finally issued a letter to the DOL–OWCP, which communicated the plaintiff's grade and pay increases from February 1, 1993 onward. The DVA sent copies of the letter to both Owens and her attorney.

But the letter was not without its problems. Rather than notifying the Department of Labor that the plaintiff was "in" a Nurse II category as of February 1, 1993, the letter stated that Owens was "promoted" to that category on the date in question. The significance of the words was this: According to DOL policy, salary increases due to promotion are withheld during any period that an employee receives worker compensation benefits. At the time the settlement agreement was executed, Owens was receiving worker's compensation from the DOL, and, therefore, the use of the word "promoted" resulted in the DOL withholding retroactive payments at that level to the plaintiff.

On July 29, 1997, the DVA issued its Final Agency Decision, which denied any breach of the Agreement on its part. The decision also characterized the failure of the DVA to inform the DOL of pay adjustments as an "oversight" that had been corrected pursuant to the July 1 letter. Furthermore, the DVA denied Owens' allegations that the DVA had misinformed the DOL as to her proper hourly rate of compensation, informed the plaintiff that the DVA cannot be held accountable for losses of compensation attributable to the "tardiness and lack of closure" on the part of the DOL, and instructed the plaintiff on how to appeal the DVA's decision.

Owens did just that, appealing the DVA's decision on August 21, 1997. On June 2, 1999, the EEOC found for the DVA holding that it was not affirmatively required by the terms of the Agreement to provide any specific information to the DOL. The EEOC decision makes no reference to any arguments made by the DVA that Owens' claims were time-barred.

Owens filed a civil action with this Court on July 2, 1999, and filed an amended complaint adding the claim for equitable reformation of the Agreement on April 10, 2000.

## II. DISCUSSION

### A. Defendant's Motion to Dismiss

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I must look only to the allegations of the complaint, accept the factual allegations as true and draw every reasonable inference

in the plaintiff's favor. *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank*, 958 F.2d 15, 17 (1st Cir.1992). A motion to dismiss for failure to state a claim may be granted only if the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The DVA moves to dismiss the plaintiff's claims with respect to breach/specific performance of the Agreement (counts I, II, and III). According to the DVA, to the extent that these claims seek to enforce a settlement agreement, they are state common law contract actions for which there is no independent basis of federal jurisdiction under 28 U.S.C. § 1367. They are only appropriate in federal court as claims pendent to a viable federal claim and, according to the DVA, there are no viable federal claims. If, on the other hand, these counts (as well as Count IV for retaliation) are actions cognizeble under Title VII, the plaintiff was obliged to exhaust administrative remedies, which DVA maintains, she failed to do.

The first question I must address, then, is whether an action to enforce an pre-determination EEOC settlement agreement is a federal claim under Title VII or a state law contract claim.

### 1. Are Claims Arising Under a Pre–Determination EEOC Settlement Agreement Actions under Title VII or State Common Law Contract?

■ Under Title VII "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter." 42 U.S.C. § 2000e–5(f)(3).[5] The question here is whether an action to enforce an EEOC settlement agreement constitutes an "action under this subchapter" to confer federal jurisdiction.

When Congress enacted Title VII it created a unique regulatory scheme. The EEOC, unlike the National Labor Relations Board, could not hold adjudicatory hearings, or impose administrative sanctions, like cease and desist orders. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Enforcement of the statute was primarily through individual litigants, functioning as "private attorneys' general," rather than through a government agency. 42 U.S.C. § 2000e–5(f)(1). And in such lawsuits, the federal courts were given "plenary powers to secure compliance with Title VII." *Id.; see also Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1132 (6th Cir. 1990) ("final responsibility for enforcement of Title VII is vested with federal courts").

Nevertheless, the EEOC's role was essential. It was expressly charged with expediting the settlement of disputes through "conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit." *Gardner–Denver*, 415 U.S. at 44, 94 S.Ct. 1011. Its authority to conciliate was "central to Title VII's statutory scheme," *EEOC v. Henry Beck Co.*, 729 F.2d 301, 306 (4th Cir.1984), and a "preferred means of achieving" the goals of Title VII,[6] *Gardner–Denver*, 415 U.S. at 44, 94 S.Ct. 1011, both because conciliation promoted greater harmony in the workplace and because voluntary settlement saved judicial resources.[7]

---

**5.** The reference to "this subchapter" encompasses all of Subchapter VI (Equal Employment Opportunities), otherwise referred to as "Title VII." 42 U.S.C. §§ 2000e to 2000e–17.

**6.** For example, the EEOC may not commence legal action until it has attempted to negotiate voluntary compliance.

**7.** The 1972 amendments to Title VII gave the EEOC independent enforcement authority,

■ The EEOC effects a settlement in two ways: The more traditional approach is a conciliation agreement following the EEOC's formal determination of probable cause.[8] But in recent years, to deal with a bourgeoning case load, the EEOC has attempted to effectuate settlements even before the EEOC's investigative resources were tapped, notably through pre-determination agreements.[9]

Plainly, Title VII's emphasis on voluntary compliance would be compromised if federal courts were found to lack jurisdiction to enforce agreements of this sort. Complaining parties might hesitate to settle viable federal claims pursuant to EEOC-mediated agreements if in so doing they relinquished future access to a federal forum to enforce these agreements. If the EEOC or the aggrieved employee could not enforce a settlement agreement in federal court, employers would be able to engage in a number of "dilatory tactics which would frustrate the congressional intent of rapid resolution of disputes." *Henry Beck Co.*, 729 F.2d at 306. As the Eleventh Circuit noted, employers might,

abide the conciliation agreement until the 180–day period for filing charges with the EEOC passes and then breach the agreement. By that time, it would be too late to file any charges regarding the employer's underlying discriminatory act, which had led to the agreements. Even if late filing of charges is permitted for reasons of equity, the employee would still be prejudiced since the EEOC investigation would have been substantially delayed. Crucial witnesses might no longer be available or not remember the incident, and vital written evidence might have been disposed of. Thus, in the end, the employee, if not permitted to enforce the agreement in federal court, might be without any remedy. If the EEOC had to pursue the usual process [of investigation and reasonable cause determination] before enforcing a pre-determination settlement, such agreements would be meaningless. *Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503, 1513 (11th Cir.1985).

Moreover, other courts addressing this issue have underscored concerns about the uniform enforcement of the EEOC laws.

but still short of the cease and desist powers that reposed in the NLRB. Rather, the EEOC was authorized to seek court enforcement through a civil action in certain cases. 42 U.S.C. §§ 2000e–6(e), 2000(e)–5(b).

8. If the Commission, after investigating a charge against an employer, determines that there is reasonable cause to believe the allegations are true, it must initially try to eliminate the alleged unlawful employment practice through conciliation and persuasion. If the Commission is unable to secure an acceptable conciliation agreement within thirty days after the charge is filed, it may bring suit in a United States District Court under § 706(f)(1) alleging an unlawful employment practice. 42 U.S.C. § 2000e–5(b).

9. The scheme by which the EEOC processes unfair employment practice charges, including the negotiation of conciliation agreements, is set forth in § 706(b) of Title VII, 42 U.S.C. § 2000e–5(b) ("the Commission shall endeavor to eliminate any such unlawful practice by informal methods of conference, conciliation, and persuasion"). Predetermination settlement agreements, on the other hand, are products of the EEOC's "Rapid Charge Processing System," regulations adopted in 1977 by the EEOC as a "response to an increasing backlog of charges resulting from time-consuming investigations." *Henry Beck Co.*, 729 F.2d at 303. *See* 29 C.F.R. § 1601.20(a) (1979) ("Prior to the issuance of a determination as to reasonable cause, the Commission may encourage the parties to settle the charge on terms that are mutually agreeable ... The Commission shall limit its undertaking in such settlements to an agreement not to process that charge further. Such settlements shall note that the Commission has made no judgment on the merits of the charge.")

Were the construction of EEOC settlement agreements not subject to uniform federal standards, there could well be "fifty different state court interpretations of important provisions." *EEOC v. Liberty Trucking Co.*, 695 F.2d 1038, 1043 (7th Cir.1982). Some state courts, for example, might be wary of enforcing certain terms typically included in these agreements, such as specific performance clauses. *See Eatmon*, 769 F.2d at 1512 (citing 81 C.J.S. Specific Performance § 96 (1977) (Supp. 1982)); *Liberty Trucking*, 695 F.2d at 1043 ("many state courts are hostile to specific performance clauses in employment contracts"); *e.g., Barthuli v. Board of Trustees*, 19 Cal.3d 717, 139 Cal.Rptr. 627, 566 P.2d 261 (1977) (Supreme Court of California held that, under California law, an employee cannot obtain specific performance of an employment contract where he has an adequate remedy at law in an action for damages).[10]

To be sure, some courts have recognized a distinction between direct court enforcement of conciliation agreements, those entered into among the parties following a formal EEOC investigation and determination of reasonable cause, and enforcement of agreements negotiated prior to an EEOC determination of the merits of the complaining employee's charge of discrimination ("predetermination agreements"). They have permitted federal enforcement of the former under Title VII, but not the latter. Plainly, the more persuasive precedent treats both kinds of agreements the same. *Compare EEOC v. Pierce Packing Co.*, 669 F.2d 605, 608–09 (9th Cir.1982) (finding that EEOC may not seek enforcement of settlement agreement in federal court without investigation and determination of reasonable cause), *with Eatmon*, 769 F.2d at 1511 (finding no distinction between conciliation agreements and pre-

determination settlement agreements for purposes of jurisdiction over enforcement actions). I am persuaded by the reasoning of those courts that have held that pre-determination settlement agreements are "brought under" Title VII is the same degree as conciliation agreements. They are no less effective than traditional conciliation agreements in serving the congressional goal of settlement through voluntary compliance:

> By allowing more frequent settlements, the [pre-determination settlement] saves resources that might otherwise be consumed in litigation and furthers the statutory goal of voluntary compliance. In addition, it enhances the aim of rapidly resolving disputes by encouraging early resolution before the Commission is required to expend time in investigations and reasonable cause determinations.

*Henry Beck Co.*, 729 F.2d at 305.

█ Nor does it matter that the enforcer of the pre-determination agreement is a private party, rather than the EEOC, so long as the document to be enforced came about under the EEOC's auspices, either pre or post-determination. *See Ruedlinger v. Jarrett*, 106 F.3d 212, 214–15 (7th Cir.1997)(plaintiffs may bring an action under Title VII to enforce a pre-determination EEOC settlement agreement); *Francisco v. West*, No. 98 C 3007, 2001 WL 563793 (N.D.Ill. May 23, 2001) (predetermination settlement agreement between a private party and an employer is directly enforceable in federal court under Title VII). *Cf. Morris v. Hobart*, 39 F.3d 1105 (10th Cir.1994)(no basis for federal jurisdiction over the enforcement of a settlement agreement, after a Title VII lawsuit had been filed, without provision for the court to retain jurisdiction).

---

**10.** Cited in *Barthuli v. Board of Trustees of Jefferson Elementary School Dist.*, 434 U.S. 1337, 1338, 98 S.Ct. 21, 54 L.Ed.2d 52 (1977).

Accordingly, this Court concludes that enforcement of an EEOC pre-determination settlement agreement is a civil action brought directly under Title VII and, therefore, governed by its relevant procedural requirements.

### 2. *Administrative Prerequisites*

■ The EEOC has adopted certain administrative prerequisites regarding compliance with EEOC settlement agreements. 29 C.F.R. § 1614.504(a) provides, in pertinent part:

Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties ... If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEOC Director, in writing, of the alleged noncompliance *within 30 days of when the complainant knew or should have known* of the. alleged noncompliance. The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased (emphasis added).

■ If a federal employee fails to timely exhaust his administrative remedies, a district court ordinarily cannot adjudicate the employee's Title VII claims. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir.1990). Since untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it. *See Brown v. Marsh*, 777 F.2d 8, 13 (D.C.Cir.1985).

Accepting for purposes of the motion to dismiss that Owens gave effective notice to the EEOC Director on May 26, 1997, the DVA contends that that notice did not meet the thirty-day limitations period because Owens knew or should have known about the DVA's alleged 'noncompliance at any of the following times:

(1) On June 23, 1995, six weeks after the execution of the Agreement when she did not receive any lump sum payments from the DOL;

(2) On October 18, 1996, when Owens wrote a letter to the DVA in which she claims to have been paid "incorrectly" because the "Dept. of Labor is now thousands of dollars behind in compensation;"

(3) On November 24, 1996, when Owens wrote a letter to the DVA in which she alleges that the DVA failed to notify the DOL that she was in the Nurse II category effective February 1, 1993; or, at the absolute latest,

(4) On January 10, 1997, during a meeting with DVA officials in which Owens was furnished with the forms with which to file a complaint with the Office of Special Counsel.

However, assisted only by a limited record, I hesitate to impute to Owens a precise moment when she may be said to have had actual or presumptive notice that a cognizable cause of action had accrued. Indeed, the DVA argues at cross purposes: In its motion for partial summary judgment, it underscores the fact that the Agreement, at the core of this dispute, is rife with ambiguities, that neither the plain language of the contractual provisions nor the parties' proffered interpretations adequately explain the obligations imposed by the Agreement. As described below, I agree.

If the parties were not clear as to what level of performance constituted "compliance" with the terms of the Agreement, they were equally unclear as to what level of DVA activity or inactivity constituted noncompliance with the Agreement. That makes it particularly difficult for this

Court—relying on an undeveloped record—to identify the exact moment when the EEOC limitations period began to run. Owens may well have been dissatisfied with DVA's performance, but the issue is when that dissatisfaction amounted to knowledge that the Agreement had been breached.

 In any case, even assuming *arguendo* that Owens failed to timely exhaust her administrative remedies, other considerations compel me to deny the DVA's motion to dismiss. The administrative exhaustion requirements are not jurisdictional, they are subject to the defenses of waiver, estoppel, or equitable tolling. *See Zipes v. Trans World Airlines,* 455 U.S. 385, 392, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (reasoning that the timely filing of an EEOC charge is not jurisdictional because the filing requirement is listed in a separate section of Title VII than the section that grants jurisdiction to the district courts); *see also Bowden v. United States,* 106 F.3d 433, 437 (D.C.Cir.1997) (the administrative time limits created by the EEOC erect no jurisdictional bars to bringing suit and, much like statutes of limitations, are subject to equitable tolling, estoppel, and waiver) (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)); *Bethel v. Jefferson,* 589 F.2d 631, 642 n. 64 (D.C.Cir.1978) (legislative history of 1972 amendments indicates that Congress did

not consider time limits to be jurisdictional in nature) (citing *Recent Development,* 65 Geo. L.J. 147, 157, 163 & n. 98 (1976)).[11]

In its July 29, 1997, Final Agency Decision, the DVA denied any breach of the Agreement. It did not protest the timeliness of Owens' complaint. Owens subsequently filed an appeal of the DVA's decision to the EEOC on August 21, 1997. On June 2, 1999, the EEOC affirmed the DVA's decision, but made no reference to any claims made by the DVA that Owens had failed to exhaust her administrative remedies in a timely fashion.

By failing to raise the timeliness issue at any point during the administrative process, the DVA waived its right to rely on that defense in challenging this Court's jurisdiction to entertain Owens' claims on the merits.[12] *E.g., Williams v. Runyon,* 130 F.3d 568, 573 (3d Cir.1997) (the Postmaster's failure to offer any evidence at trial concerning plaintiff's failure to exhaust, combined with the Postmaster's failure to raise the exhaustion issue in the motion for a directed verdict, waived the Postmaster's right to renew the exhaustion argument in a subsequent motion for a judgment n.o.v.); *Bowden,* 106 F.3d at 439 (holding that the INS waived its defense of untimely exhaustion because it responded to the merits of the complaint without questioning its timeliness during the administrative process).[13]

---

**11.** There is a division in the circuits as to whether the filing period contained in 42 U.S.C. § 2000e–16(c), which requires that a federal employee file her claim in district court not later than 30 days following final administrative action, is jurisdictional. The First Circuit has not yet resolved this issue. *Rys v. United States Postal Service,* 886 F.2d 443, 446 (1st Cir.1989) (collecting conflicting circuit authorities). In the context of 42 U.S.C. § 2000e–5(f)(1), however, the First Circuit has held that the ninety-day limit for filing private discrimination claims in federal court is not jurisdictional, and therefore, is subject to equitable considerations. *Rice v.*

*New England College,* 676 F.2d 9, 10 (1st Cir.1982).

**12.** The record before me contains the EEOC's findings which failed to make reference to such an argument being advanced by the DVA. No briefs or submissions filed by the DVA during the administrative process are before this Court.

**13.** Of course in *Bowden,* the INS failed to raise the timeliness issue at two further stages in the litigation—both in the initial suit in district court and later when the plaintiff took

■ Accordingly, Defendant's Motion To Dismiss is **DENIED**.[14]

### 3. *Retaliation Claim Under Title VII*

■ Owens alleges that the DVA retaliated against her for bringing EEOC proceedings against them by refusing to comply with the terms of the Agreement and by providing the DOL with incorrect pay, grade, and step information. Under Title VII:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e–3(a).

■ As a condition precedent to a Title VII suit in federal district court, a plaintiff must exhaust administrative remedies. *See Brown*, 425 U.S. at 832, 96 S.Ct. 1961; 29 C.F.R. § 1614.101 *et seq.* Here, Owens concedes that she never filed a formal complaint for discriminatory retaliation before the EEOC prior to raising it as a cause of action before this Court.

■ However, exceptions exist. In a recent decision, the First Circuit abrogated its prior holding in *Johnson v. General Electric*, 840 F.2d 132, 139 (1st Cir.1988) to adopt the following rule: Retaliation claims never raised before the EEOC or

---

his case to the Court of Claims. Here, on the other hand, the DVA raised the defense at the earliest opportunity after the administrative process completed, as an affirmative defense in its answer to the amended complaint. Further distinguishing the two cases is the fact that in *Bowden,* the government resorted to tactics that prolonged the litigation for years, asserting plainly contradictory responses with respect to the exclusive jurisdiction of both the district court and the Court of Claims. In this case, there are no such delays as a result of shifting legal positions. *See Bowden,* 106 F.3d at 438–39. Nevertheless, while a balance of the equities does not tilt in Owens' favor quite so much as it did in Bowden's, it suggests a finding of waiver is appropriate.

14. I need not devote considerable time to the DVA's other arguments to dismiss counts I, II, and III. First, the DVA suggests that counts I–III must be dismissed because, as causes of action essentially alleging discrimination, they may be brought pursuant only to Title VII and subject to the traditional Title VII requirements—EEOC complaint, investigation, etc., rather than under the common-law. However, only where "the gravamen of the complaint is Title VII discrimination" is the only remedy available under Title VII. *Rivera–Rosario v. U.S. Dep't of Agric.*, 151 F.3d 34, 38 (1st Cir.1998); *see also Brown*, 425 U.S. at .835, 96 S.Ct. 1961 (Title VII provides the "exclusive judicial remedy for claims of *discrimination* in federal employment") (emphasis added). Here, the thrust of Counts I–III involve breach of a Title VII Settlement Agreement rather than some underlying discriminatory event and are then subject to Title VII rules requiring the enforcement of settlement agreements. *Compare Rivera v. Dalton*, 77 F.Supp.2d 220, 224 (D.P.R.1999) (granting summary judgment against a plaintiff who brought a discrimination complaint and attempted to frame it as a breach of an earlier and entirely unrelated Title VII settlement agreement).

Second, the DVA argues that as a matter of law it cannot be held accountable for the DOL's failure or delay to remit payments to Owens because the DOL is an autonomous department with exclusive jurisdiction over workers' compensation issues. However, Owens seeks to hold the DVA accountable for alleged shortcomings in its *disclosures* to the DOL, not the DOL's failure to pay.

other relevant agencies are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency. *Clockedile v. New Hampshire Dept. of Corrections*, 245 F.3d 1, 5 (1st Cir.2001).[15]

In *Clockedile*, the plaintiff failed to allege retaliation by the New Hampshire Department of Corrections in filings with the relevant agencies antecedent to her federal claim. Nevertheless, the First Circuit did not find the federal retaliation cause of action barred because, though technically unexhausted, it was clearly related to the discrimination charge brought to the attention of the EEOC.

Clockedile, a teacher at a New Hampshire minimum security prison, filed her initial complaint with the Department's sexual harassment committee in November 1995 and with the New Hampshire Human Rights Commission, which was cross-filed with the EEOC, on December 8, 1995. She alleged that her unit manager made offensive remarks to her of a sexual nature and, after she objected, began a campaign of derision, which ended with the cancellation of one of her class meetings in November 1995.

The pattern of retaliation began almost immediately after her initial complaint.[16] On January 15, 1996, the Department relocated Clockedile to a hallway desk in another building. A short time thereafter, she was transferred out of her unit and reassigned to teach a different class. In August 1996, Clockedile complained to the warden that an officer had said that Clockedile was encouraging a female officer to sue the Department for sexual harassment. In October and November 1996, Clockedile made two more internal complaints about guards and other staff members who were shunning or disparaging her allegedly because she filed the EEOC charge. On October 28, 1996, between these complaints, Clockedile received a right-to-sue letter from the EEOC. In January 1997, Clockedile received an official letter of warning from her unit head for "exhibiting uncooperative or disruptive behavior" on a "variety of issues" over the last several months. Finally, on January 24, 1997, Clockedile brought suit in federal district court charging sexual harassment and retaliation under Title VII.

This case involves fundamentally different circumstances. Owens filed her first EEOC complaint alleging sex and disability discrimination against the DVA in October of 1993. That dispute was settled pursuant to the 1995 EEOC Settlement Agreement. Two years later, Owens filed her May 1997 complaint with the EEOC

---

15. In *Johnson*, the First Circuit held that a federal lawsuit following a discrimination complaint can include a claim of retaliation not made to the agency only if that claim "must reasonably be expected to ... have been within the scope of the EEOC's investigation." 840 F.2d at 139. This exception did not extend to situations where the complainant had not "even informed the EEOC of the alleged retaliation." *Id.* The First Circuit reversed course in *Clockedile* for a number of reasons, including the fact that Title VII does not say explicitly that the federal suit must be limited to just what was alleged in the agency complaint, the fact that most circuits have permitted retaliation claims to be made in court even though only the discrimination charge was made to the agency, and a host of policy reasons—"[r]etaliation uniquely chills remedies; and by retaliating against an initial administrative charge, the employer discourages the employee from adding a new claim of retaliation." 245 F.3d at 4–5. However, the First Circuit did not overturn the more general "scope of the investigation" test for non-retaliation claims. *Id.* at 4 (citing *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996); *Powers v. Grinnell Corp.*, 915 F.2d 34, 38–39 (1st Cir.1990)).

16. I do not say "alleged" pattern of retaliation because, after a trial in October 1999, a jury found in Clockedile's favor on the retaliation claim and awarded her $129,111.

related only to *breach* of the Agreement. Nowhere in that complaint did she level any allegations of discrimination on the part of the DVA, stemming either from her original complaint—the 1993 incidents involving DVA Associate Director Roland Moore—or any subsequent series of events. In fact, from October of 1993 until July of 1999, Owens never leveled any further allegations of discrimination on the part of the DVA until this lawsuit.

From these facts, there is no basis to conclude that Owens' instant retaliation claim is in any way related to or grows out of the discrimination complained of in 1993. Unlike in *Clockedile,* the chronology of allegedly retaliatory events did not unfold rapidly and in quick succession after Owens filed her first EEOC complaint in 1993, but rather commenced nearly two years later (after the execution of the 1995 Agreement) and were drawn out over the course of an additional two years. The three incidents of alleged breach occurred: (1) six weeks after execution of the Agreement (approximately June 23, 1995) when the DVA should have contacted the DOL, (2) on July 12, 1996, in the letter that provided the DOL with Owens' incorrect pay rate information, and, (3) on July 1, 1997, when the DVA informed the DOL that Owens was "promoted" to a Nurse II category. On their face, these incidents do not appear in any way to be a direct continuation of the conduct that had been complained of to the EEOC in 1993.

Furthermore, to the extent that courts overlook a failure to exhaust a retaliation claim because the appropriate agency is aware of the broader pattern of discrimination (of which the retaliation may be considered a component),[17] until Owens' federal action, neither the DVA nor the EEOC had any reason to anticipate a claim of retaliatory noncompliance with the Settlement Agreement. From that point until the EEOC action for breach in 1997, all of Owens' correspondence and internal complaints with DVA officials refer exclusively to the failure of the DVA to honor the Agreement; nowhere does she so much as intimate that these claimed violations relate back to her 1993 EEOC action or any pattern of ongoing discrimination.[18]

Finally, inasmuch as courts excuse exhaustion shortcomings for retaliation claims because of practical considerations, none are implicated in this case. Whereas in *Clockedile,* the plaintiff obtained a lawyer and filed her agency complaint *before* the first act of alleged departmental retaliation,[19] nothing impeded Owens' ability to bring a retaliation claim in the 1997 EEOC proceeding; the alleged acts of noncompliance all occurred before May of 1997 when, with the assistance of counsel, she filed her EEOC complaint.

17. The exhaustion requirement ensures that employers get the first shot at redressing alleged discrimination before the intervention of the federal judiciary. *See Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 127 (7th Cir.1989) ("[T]he reason behind the requirement that allegations not contained in an EEOC charge cannot be contained in the complaint is that the defendant must have notice of the charge").

18. Clockedile complained to the New Hampshire Department of Corrections that it was retaliating against her—though not in a formal EEOC charge—within months of her initial EEOC complaint alleging discrimination. In other words, unlike the Department of Corrections in *Clockedile,* the DVA did not receive notice for nearly four years that any alleged noncompliance with the Agreement was somehow connected to the discrimination complained of in the 1993 EEOC action.

19. In fact, as the First Circuit noted, Clockedile's claimed constructive/retaliatory discharge appears to have occurred even *after* her federal lawsuit was filed in January 1997.

Accordingly, because Owens' retaliation claim is not reasonably related to the discrimination she complained of to the DVA in 1993, the claim is barred for Owens' failure to exhaust her administrative remedies as required under Title VII.

### B. *Plaintiff's Motion for Partial Summary Judgment*

■■■ Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a summary judgment motion, the Court "must view the record and draw inferences most favorably to the opposing party." *Pignons S.A. de Mecanique de Precision, v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir.1981). In evaluating the record on summary judgment, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987). Rather, the question is simply whether there is *any* evidence upon which a jury could properly proceed to find a verdict in the DVA's favor. *Caputo v. Boston Edison Co.*, 924 F.2d 11, 13 (1st Cir.1991). I find that there is.

■■■ When a contract is entered into "pursuant to authority conferred by federal statute," as a general rule the contract principles of federal law govern.[20] *Miree v. DeKalb County*, 433 U.S. 25, 28, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (The "necessity of uniformity of decision demands that

federal common law, rather than state law, controls such a contract's interpretation"); *see also Snider v. Circle K Corp.*, 923 F.2d 1404, 1407 (10th Cir.1991) (quoting *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir.1981) ("[f]ederal common law governs the enforcement and interpretation of such agreements because the 'rights of the litigants and the operative legal policies derive from a federal source' ")).

■■■ Contract interpretation, under federal law, "dovetails precisely with general principles of contract law," such that, under both, "the judicial task in construing a contract is to give effect to the mutual intentions of the parties." *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 681 (D.C.Cir. 1985). This determination begins with the plain language of the contract provisions; if the terms of a contract are not susceptible to more than one construction, the contract will be construed according to the ordinary meaning of the words contained in its provisions. *J.I. Corp. v. Federal Ins. Co.*, 920 F.2d 118, 119 (1st Cir.1990). Thus, however inartfully drafted, contracts containing unambiguous language must be construed according to their "plain and natural meaning." *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir.1995).

The provisions of the Agreement relevant to this dispute—Paragraphs 1 & 2— do not *by their terms* impose any affirmative duties on the DVA to inform the DOL of pay changes within a specific time period, to inform the DOL how the plaintiff came to be placed in the Nurse II category using precise means or language, or to take steps to ensure that the DOL compensate Owens for back pay within a given time period.

---

20. *See, infra,* discussion regarding federal jurisdiction to enforce EEOC settlement agreements.

Paragraph 1 requires only that there "be" a retroactive grade and pay increase to the Nurse II position as of February 1, 1993 and that retroactive money "shall be issued" to Owens within approximately 6 weeks from the date of the Agreement. The DVA—the only party to this Agreement with Owens—appears to have fully complied with this provision when, within three months of executing the Agreement, it "issued" the lump-sum amount the plaintiff would have received from the DVA as a Nurse II retroactive to February 1, 1993. The Agreement otherwise makes no mention of any payment obligations of the DOL or of an enforcement deadline by which time the DVA was obliged to ensure that the DOL complied with the Agreement, assuming it was so required.

With respect to Paragraph 2, the language states that "[f]or all purposes, including formal change of her personnel record and representations to the Department of Labor," the DVA "shall state" that Owens "is in" the Nurse II category. While the precise meaning of this provision is subject to dispute, it does not on its face obligate the DVA proactively to *make* representations to the DOL or to initiate with the DOL any communication regarding changes in Owens' employment and compensation status. Conceivably, the DVA fulfills its burden under Paragraph 2 when it discloses the retroactive change during its first dealings with the DOL on the subject of Owens' employment status, *whenever that moment should arrive.* Indeed, since the provision is silent as to the DVA's affirmative duties of disclosure, it may be that the parties contemplated that Owens would bear the initial burden of contacting the DOL, at which time, upon

appropriate inquiry from the DOL, the DVA's obligations under Paragraph 2 would be triggered.

Furthermore, even assuming that an affirmative duty to disclose exists, the Agreement does not specify a time frame by which the DVA must communicate information regarding the plaintiff's changed pay rate and grade to the DOL.[21] Arguably, the DVA fulfilled its disclosure obligation in its July 1, 1997 correspondence notifying the DOL of the change in Owens' status.

Regarding the content of the DVA's representation to the DOL that Owens was "promoted" to Nurse II category on February 1, 1993, this statement conceivably fulfills the DVA's obligation to state that Owens "is in the Nurse II category" as of the appropriate date. The provision does not clearly define the manner or language by which the DVA was to inform the DOL as to how the plaintiff came to be placed in the Nurse II category.

The plaintiff advances a strict, literal interpretation of Paragraph 2 that would require the DVA to duplicate verbatim the phrase "Teresa Owens is in the Nurse II category" in all representations to the DOL. Yet it is no less plausible to construe the provision as requiring the DVA, by whatever means feasible, merely to communicate to the DOL that Owens' status had changed to Nurse II as of February 1, 1993. The July 1 letter certainly achieves that end, and, though the precise choice of "promotion" terminology incurred adverse consequences for the plaintiff with regards to workers' compensation benefits, it does not beyond dispute establish liability for

---

21. The only explicit time frame appears in Paragraph 1 ("retroactive monies shall be issued to Ms. Owens within approximately 6 wks"); that clause, however, does not modify the relevant language of Paragraph 2 con-

cerning "representations to the DOL." Had the parties intended the DVA to contact the DOL within a particular time frame, they might readily have included such a provision in the explicit text of the Agreement.

breach of contract to justify summary judgment.

Finally, with respect to the July 12, 1996 memorandum, in which DVA employee Rothstein allegedly miscalculated Owens' salary as $38,541 rather than $48,342, since the terms of the Agreement fail to make reference to any obligation on the part of the DVA to provide the DOL with salary or pay scale information, summary judgment is also inappropriate on this score.

Notwithstanding ambiguities in the express language, the plaintiff argues that the Agreement "manifestly" or "implicitly" imposed on the DVA the aforementioned affirmative duties with respect to the timing and content of communications with the DOL. She maintains that the "gravamen of the agreement" was receipt of the retroactive moneys and, therefore, in order to effectuate "the intent of the parties," the DVA was required to take appropriate action with respect to the DOL. The DVA suggests the opposite: The gravamen of the agreement was the accommodation to Owens' disability. No affirmative obligations on DVA were "implicit" or "manifest." The record before me supports either the plaintiff's interpretation or the defendant's.

Accordingly, summary judgment is inappropriate. Owens' Motion for Partial Summary Judgment is **DENIED**.

## III. *CONCLUSION*

I conclude that Owens failed to exhaust her Title VII administrative remedies with respect to her retaliation claim (count IV). I conclude that counts I and II should not be dismissed because it is not clear on the basis of this record at what point the plaintiff knew or should have known that the DVA breached the Agreement and in any case, the DVA waived its right to assert a timeliness defense. Accordingly, the DVA's Motion to Dismiss the Plaintiff's Amended Complaint [docket entry # 25] is

**GRANTED** as to Owens's retaliation claim (count IV) and **DENIED** as to the remainder of the action (Counts I, II, and III).

Because genuine issues of material fact exist as to the DVA's liability for breach of the EEOC Settlement Agreement, Owens's Motion for Partial Summary Judgment [docket entry # 12] is **DENIED**.

**SO ORDERED.**